## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**HAROLD JONES,**

              **Plaintiff,**                **CIVIL ACTION NO. 09-CV-11211**

    **vs.**

                                **DISTRICT JUDGE DENISE PAGE HOOD**

**CHARTER TOWNSHIP OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**GENESEE, OFFICER ROBERT**
**ROBERTS and OFFICER PAUL**
**COLLIVER,**

              **Defendants.**

_____/

### REPORT AND RECOMMENDATION

**I.     RECOMMENDATION:**  This Court recommends that Defendant Roberts, Colliver, and

Charter Township of Genesee's Motion for Summary Judgment (docket no. 10) be **GRANTED IN**

**PART AND DENIED IN PART**.

**II.     REPORT**:

       This matter comes before the Court on the Motion for Summary Judgment filed by

Defendants Roberts, Colliver, and the Charter Township of Genesee ("Township"). (Docket no. 10).

The motion is fully briefed.  This matter has been referred to the undersigned for determination

pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 13).  The Court dispenses with oral argument

pursuant to E.D. Mich. LR 7.1(f).  The motion is now ready for ruling.

**A.  Factual Background and Claims**

       Plaintiff filed this lawsuit on April 1, 2009 pursuant to 42 U.S.C. § 1983 and state law.

Defendants Roberts and Colliver are police officers employed by Defendant Township. According to the complaint, on January 24, 2009 Plaintiff's wife called 911 seeking emergency medical assistance for her husband whom she suspected was having a seizure, heart attack, or stroke. Plaintiff was described as being disoriented, violent, and he was physically resisting assistance from his family by pushing them away. (Docket no. 15, Ex. 2). The 911 operator contacted EMS.

At 7:24 a..m. the medical unit arrived, consisting of a paramedic and an EMT (collectively referred to as "EMTs"). When the EMTs attempted to assess the Plaintiff's vital signs and put a blood pressure cuff on Plaintiff, he became belligerent and began flailing his arms as he walked. (Docket no. 15, Ex. 1 Dep. at 24-25, Ex. 5 Dep. at 12-13). Plaintiff's wife states that Plaintiff was staggering as he walked and he did not want people touching him. (Docket no. 15, Ex. 1 Dep. at 24, 26). The EMTs determined that the scene was unsafe and called for police assistance. (Docket no. 15, Ex. 5 Dep. at 12-13). The EMS report states that Plaintiff was "very violent," and that the EMTs were unable to make any progress until the police arrived. (Docket no. 15, Ex. 4).

At approximately 7:32 a.m. Defendant Roberts arrived on the scene. Various members of Plaintiff's family testified at deposition that they immediately recognized Defendant Roberts as an Officer with whom they have had negative encounters with in the past. (Docket no. 15, Ex. 8 Dep. at 13, Ex. 3 Dep. at 10-15). Deposition testimony shows that Defendant Roberts was aware that he had been dispatched for a medical assist. (Docket no. 15, Ex. 7 Dep. at 12). Although there is dispute over how much Defendant Roberts knew of Plaintiff's condition, the evidence indicates that he was informed that Plaintiff was "having a heart attack, he's a diabetic, he's got a heart condition, he's not on any drugs or anything, [and] he just needs to go to the hospital." (Docket no. 15, Ex. 8 Dep. at 13).

Officer Roberts first encountered Plaintiff in the hallway between the bathroom and the bedroom. He states that the Plaintiff was screaming and very belligerent. (Docket no. 15, Ex. 7 Dep. at 17). Plaintiff's wife testified that Defendant Roberts was the one who was screaming, stating that Defendant Roberts screamed, hollered, and repeatedly called her husband a "son of a bitch." (Docket no. 15, Ex. 1 Dep. at 27-28). According to Defendant Roberts, he approached the Plaintiff, asked him what was going on, and instructed him to calm down. (Docket no. 15, Ex. 9 Dep. at 21). Defendant Roberts states that he was trying to reason with the Plaintiff and let him know that it appeared he had some type of medical condition and that they were trying to render aid. (Docket no. 15, Ex. 7 Dep. at 22).

Defendant Roberts "grabbed a hold of [Plaintiff's] wrist and elbow in an attempt to escort him out of the residence and into the waiting ambulance." (Docket no. 15, Ex. 7 Dep. at 27). Plaintiff's response was to pull away from the Defendant and walk into an adjacent bedroom. Plaintiff's wife states that Defendant Roberts wrestled with her husband in the hallway trying to get him back into the bedroom. She also states that Defendant Roberts was very physical with Plaintiff, twisting and wrenching his arm behind his back, pushing and shoving him, and calling him a "son of a bitch." (Docket no. 15, Ex. 1 Dep. at 28-29).

Once in the bedroom Defendant Roberts grabbed the Plaintiff, allegedly called him more derogatory names, and told him that he was going to go to jail. (Docket no. 15, Ex. 3 Dep. at 32). Plaintiff's son states that Defendant Roberts pushed Plaintiff onto the bed, put his knee into his back, and tried to get Plaintiff's hands behind his back in order to handcuff him. (Docket no. 15, Ex. 8 Dep. at 17). Evidence shows that Defendant Colliver was on the scene at this time and merely stood watching Defendant Roberts and the Plaintiff. (Docket no. 15, Ex. 8 Dep. at 20). Defendant Roberts

confirmed that he "tried to take [Plaintiff] down onto a bed in an attempt to get better control of him." (Docket no. 15, Ex. 7 Dep. at 28-29). When this effort failed, Defendant Roberts pushed the Plaintiff out of the bedroom and down the hallway. (Docket no. 15, Ex. 7 Dep. at 29). Defendant Roberts testified that it was his intent to get the Plaintiff to the ambulance for treatment.

In the living room, Defendant Roberts allegedly forced Plaintiff face first over a couch. (Docket no. 15, Ex. 7 Dep. at 32-33, Ex. 1 Dep. at 33). Plaintiff's wife states that Defendant Roberts grabbed Plaintiff's left hand in an attempt to get it behind his back, he had Plaintiff's right arm twisted and wrenched behind Plaintiff, and he was "smashing" Plaintiff down over the back of the couch, all the while threatening to taser Plaintiff. (Docket no. 15, Ex. 1 Dep. at 32-33). According to Defendant Colliver, Defendant Roberts was attempting to restrain the Plaintiff who was resisting and pulling away. (Docket no. 15, Ex. 11 Dep. at 8). Defendant Colliver states that he approached the right side of Plaintiff, placed him in a wrist lock, and advised the Plaintiff to stop resisting. (Docket no. 15, Ex. 11 Dep. at 9-10). Evidence indicates that it was the Plaintiff's family who finally convinced Plaintiff to walk outside to the waiting ambulance. (Docket no. 15, Ex. 8 Dep. at 26).

Once on the ambulance gurney Plaintiff was placed in soft restraints. The EMS report shows that Plaintiff was flailing, repeatedly tore off his oxygen mask and attempted to strike the Defendants and the EMTs. (Docket no. 15, Ex. 4). Deposition testimony shows that Defendant Roberts put his knee in Plaintiff's chest and handcuffed him to the gurney. (Docket no. 15, Ex. 1 Dep. at 39). The EMS report shows that Plaintiff was restrained at approximately 7:38 a.m., six minutes after Defendant Roberts arrived on the scene. (Docket no. 15, Ex. 4). Plaintiff was transported to the hospital, and his handcuffs and soft restraints were removed. (Docket no. 15, Ex.

4).

Plaintiff now alleges that he suffered permanent injuries as a result of the Defendants' actions. He sues Defendants Roberts and Colliver in their individual capacities. Defendants move for summary judgment.

**B. Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C. Analysis**

**1. 42 U.S.C. § 1983**

Count I of Plaintiff's complaint asserts claims of excessive force and deliberate indifference against Defendants under 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendants were persons acting under color of state law. Thus, the only remaining

issue under a § 1983 analysis is whether the Defendants deprived Plaintiff of a constitutional right.

Defendants Roberts and Colliver claim that they are entitled to the defense of qualified immunity. In determining whether a qualified immunity defense shields Defendants from individual civil liability, the court should consider whether "taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution." *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (citation omitted). "If . . . a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. (citation and internal quotation marks omitted). *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (the court may exercise its discretion in deciding which of the two steps should be addressed first).

### a. Excessive Force - Defendants Roberts and Colliver

Plaintiff alleges that Defendant Roberts used excessive force in restraining the Plaintiff. He further argues that Defendant Colliver did not offer any type of assistance to Plaintiff but merely stood by, watching the assault unfold. (Docket no. 1, complaint at 4).

Excessive force claims against police officers are governed by the Fourth Amendment and require the court to determine whether the amount of force used was objectively reasonable. *Graham v. Connor,* 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (citations and internal quotation marks omitted). In order to hold an officer liable for excessive force, a plaintiff must prove that the officer: (1) actively participated in the use of excessive force; (2) supervised the officer who used excessive

force; or (3) owed the victim a duty of protection against the use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Before an excessive force claim is cognizable under the Fourth Amendment, a seizure must occur. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). The Sixth Circuit has defined seizure as an "intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously to submit." *Peete v. Metro. Gov't of Nashville and Davidson County*, 486 F.3d 217, 220 (6th Cir. 2007).

The Sixth Circuit in *Peete v. Metro. Gov't of Nashville and Davidson County*, 486 F.3d 217 (6th Cir. 2007), held that paramedics who responded to a call for medical assistance were entitled to the defense of qualified immunity on plaintiff's § 1983 claims. *Id*. at 210. In *Peete*, a woman contacted 911 seeking medical assistance for her grandson who was having an epileptic seizure. The defendant paramedics, along with firefighters and emergency technicians, tied the grandson's hands and ankles and used their bodies to restrain the grandson. *Id.* at 219-20. The grandson died because he was unable to breathe. The Sixth Circuit held that the grandson had not been seized for purposes of the Fourth Amendment in part because he was unconscious at the time of the restraint and could not perceive any restraint on his liberty or otherwise feel compelled to submit to a governmental show of force. *Id*. at 221. The court also concluded that "where the purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate," there is no seizure within the meaning of the Fourth Amendment, thus no constitutional violation. *Id*. Finally, the court found that the district court erred in failing to grant qualified immunity to the defendant paramedics because there is "no case authority holding that paramedics answering a 911 emergency request for help engage in a Fourth Amendment 'seizure' of the person when restraining the person

while trying to render aid. Hence there is no 'clearly established law' creating federal liability for a constitutional tort under these circumstances." *Id*. at 219.

In *Mills v. Hall*, No. 06-15689, 2008 WL 2397652 (E.D. Mich. June 10, 2008), the court extended the holding of *Peete* and found that a police officer did not unlawfully seize a conscious plaintiff in violation of the Fourth Amendment when the officer was providing medical assistance to paramedics. *Id.* at *8. In *Mills*, defendant police officer was called to the scene to assist EMS officers, a paramedic, and an EMT specialist. Plaintiff was staggering, sweating profusely, and his color was gray. When the plaintiff refused to enter the ambulance and permit EMS to assess his condition, defendant officer was called to the scene to assist. Defendant officer repeatedly grabbed the plaintiff's wrist and arm in an effort to pull him out of a car. He also grabbed and tore the plaintiff's clothing. Plaintiff struggled and allegedly swung at the defendant, striking him in the face. Over time, Plaintiff was removed from the car, handcuffed, and secured to the stretcher with soft restraints. Defendant officer allegedly told the plaintiff that he was under arrest. The Court found that no Fourth Amendment seizure had occurred because the defendant officer was attempting to assist the plaintiff in receiving necessary medical attention, and was not acting to enforce the law, deter, or incarcerate. *Id.* at *6-8.

In *Wilson v. Blackman Charter Twp.*, No. 09-10150, 2010 WL 1923794 (E.D. Mich. May 12, 2010), under factually similar circumstances, the court, without addressing whether a Fourth Amendment seizure occurred under *Peete*, concluded that the defendant officer, who was dispatched to assist plaintiff with a medical condition, was entitled to summary judgment on plaintiff's excessive force claim because the amount of force the defendant officer used was reasonable. *Id.* at *4-5.

In the instant case, following either *Peete* and *Mills*, or *Wilson*, the Court should find that Defendant Colliver is entitled to summary judgment on Plaintiff's claim of excessive force. Defendant Colliver was dispatched to the scene to provide medical assistance. His involvement in the Plaintiff's restraint was limited to placing a wrist lock on the Plaintiff in the living room and assisting in restraining Plaintiff to the ambulance gurney. Even assuming that there was a Fourth Amendment seizure, given the circumstances of this case the amount of force used by Defendant Colliver was not unreasonable. Plaintiff alleges that Defendant Colliver stood by and did nothing while Defendant Roberts used excessive force against him. However, Plaintiff has not shown that Defendant Colliver supervised Defendant Roberts or owed Plaintiff a duty of protection under the circumstances of this case. Moreover, Plaintiff's son testified that during the struggle in the bedroom, Defendant Colliver told Defendant Roberts to pull Plaintiff off the bed, which led to Plaintiff being led down the hallway and into the living room - closer to the ambulance. (Docket no. 15, Ex. 8 Dep. at 21). Accordingly, Defendant Colliver is entitled to summary judgment on Plaintiff's claim of excessive force.

With respect to Defendant Roberts, who was also on the scene to provide assistance to the EMTs, the Court should find that genuine issues of material fact remain concerning whether the amount of force used by Defendant Roberts was reasonable. Testimony shows that Defendant Roberts and Plaintiff's family have a history of negative encounters which appear to have created a deep level of mistrust. Drawing all reasonable inferences in favor of the Plaintiff, the Court finds that the history between Defendant Roberts and Plaintiff's family taints the present incident and raises an issue of fact as to whether Defendant Roberts' restraint of Plaintiff, whether in the hallway, the bedroom, the living room, or on the ambulance gurney, was reasonable or was excessive and was

intended to punish Plaintiff. Therefore, the Court recommends that the Motion for Summary Judgment on Plaintiff's excessive force claim against Defendant Roberts should be denied.

**b. Deliberate Indifference - Defendants Roberts and Colliver**

Defendants move for summary judgment on Plaintiff's claim of deliberate indifference to Plaintiff's medical needs. (Docket no. 10, brief at 15). Plaintiff did not respond to Defendants' Motion for Summary Judgment with regard to this claim. Insofar as Plaintiff alleges that Defendants Roberts and Colliver were deliberately indifferent to his serious medical need, the claim falls within the ambit of the due process clause of the Fourteenth Amendment. To prevail on this claim, Plaintiff must demonstrate the existence of a sufficiently serious medical need, and "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the [Plaintiff], that [the Defendants] did in fact draw the inference, and that [Defendants] then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001) (citation omitted). The applicable deliberate indifference standard is tantamount to intent to punish the Plaintiff by withholding medical treatment. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).

There is no dispute that Plaintiff suffered from a serious medical need. However the evidence shows that the Defendant Officers were called to the scene for medical assistance, and that Plaintiff was escorted out of the house and to the waiting ambulance for medical care as soon as he became compliant. Based on the record before it, the Court finds that there is no genuine issue of material fact that Defendants Roberts and Colliver were deliberately indifferent to Plaintiff's medical need. Consequently, Plaintiff's deliberate indifference claim against Defendants Roberts and Colliver, to the extent he has asserted one, fails.

### c. Civil Rights Claims - Defendant Township

Plaintiff alleges that he has asserted a valid claim for municipal liability against Defendant Township based on the Defendant Township's lack of training in medical assist calls with a person with a seizure, and its failure to investigate citizen complaints regarding excessive force claims. (Docket no. 15, brief at 15-16).

A municipal defendant "cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)). Instead, "[f]or liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort." *Gregory,* 220 F.3d at 441. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 US 378, 388 (1989). A municipality may be found to have been deliberately indifferent if the inadequacy in its training program is "so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

The record reflects that Defendants Roberts and Colliver did not undergo specific training in handling medical assist calls with a person with a seizure. Nevertheless, the Genesee Township Chief of Police testified in his deposition that training programs are offered to officers employed with the Defendant Township on a variety of different subjects. (Docket no. 15, Ex. 12 Dep. at 23-24). In fact, both Defendants Roberts and Colliver demonstrate that they have received training in "People in Crisis Intervention." (Docket no. 10, Ex. 1, 4).

"The Court knows of no law that requires a municipality to train its officers for every

possible contingency - foreseen and unforeseen." *Holiday v. City of Kalamazoo*, 255 F. Supp. 2d 732, 737 (W.D. Mich. 2003). The record does not demonstrate that Genesee Township police officers so often violate the constitutional rights of individuals who are having seizures that the Defendant Township was deliberately indifferent by failing to initiate further training. Based on the record before it, the Court finds that no reasonable juror could find that Defendant Township was deliberately indifferent to the rights of citizens by failing to train its officers in handling medical assist calls with a person with a seizure.

Next, Plaintiff alleges that Defendant Township routinely violated the Michigan Commission on Law Enforcement Standards (MCOLES) by failing to investigate citizen complaints regarding excessive force claims. Plaintiff contends that since 1999 there have been twenty-one citizen complaints in Genesee Township, seven of which involved Defendants Roberts and Colliver. Of the seven citizen complaints against these Defendants, two of the complaints, one filed against each Defendant, involved claims of excessive force.

Plaintiff argues that when an excessive force claim is made a detailed investigation of the nature of the force and the circumstances must occur. (Docket no. 15, brief at 19). He asserts that an appropriate investigation did not occur in the instant case because the Defendants submitted "grossly inadequate" police reports and claim not to remember having had a conversation with the Chief of Police regarding the incident with Plaintiff. (Docket no. 15, brief at 19). In addition, Plaintiff's expert has opined that the Defendant Township hid behind the "Blue Curtain" and willfully and intentionally obstructed the investigation into Plaintiff's complaint of excessive force. (Docket no. 15, brief at 19).

Testimony elicited from the Defendant Township's Chief of Police shows that Plaintiff's

father-in-law complained that Defendants' used excessive force in restraining the Plaintiff. (Docket no. 15, Ex. 12 Dep. at 30-32). The record shows that the Chief of Police met with Plaintiff's father-in-law, Plaintiff's wife, the police supervisor, and a lieutenant regarding the father-in-law's complaint. (Docket no. 15, Ex. 20). When the Police Chief asked for additional information and statements from Plaintiff's family regarding their concerns, Plaintiff's father-in-law refused to elaborate and declined to make a formal statement. (Docket no. 15, Ex. 12 Dep. at 31, Ex. 20). The day after the meeting with Plaintiff's family took place, the Chief of Police contacted the Plaintiff to inform him that an investigation was ongoing.

In the days and weeks to follow, the record shows that the Police Chief reviewed Defendant Colliver's police report, interviewed Defendant Roberts, and reviewed the 911 dispatch report. (Docket no. 15, Ex. 20). The conclusions drawn in the Investigation Report state in part "[a]fter reviewing the original [police] reports . . . and the 911 Dispatch tape . . ., and lacking cooperation of the complaining parties, it appears that Off. Roberts acted in accordance with established Department Policy and Procedures in this situation." (Docket no. 15, Ex. 20). The result of the investigation was that the excessive force complaint was "not sustained," meaning there was insufficient evidence to either support or disprove the allegation. (Docket no. 15, Ex. 20). Defendant Roberts was counseled on controlling his language in the presence of civilians. (Docket no. 15, Ex. 20).

The Court finds insufficient evidence in the record to demonstrate that there is a genuine issue of material fact with regard to Defendant Township's failure to investigate. Plaintiff has failed to provide proof to demonstrate that Defendant Township had a custom, policy, or practice which caused a constitutional deprivation. Accordingly, Plaintiffs federal claims against Defendant

Township should be dismissed.

## 2. State Law Claims

### a. Assault and Battery

Plaintiff alleges that Defendant Roberts made an intentional and unlawful threat to do bodily injury to Plaintiff by striking him repeatedly, wrestling him to the ground, using excessive force to place him in restraints, and using excessive force while Plaintiff was restrained. Plaintiff further alleges that Defendant Colliver did not prevent Defendant Roberts unlawful acts.

Under Michigan law, a police officer who uses excessive force may be held liable for assault and battery. *Affer v. Taylor*, No. 05-74064, 2007 WL 1238909, at *6 (E.D. Mich. April 27, 2007) (citing *White v. City of Vassar*, 403 N.W.2d 124 (Mich. Ct. App. 1987)). Police officers are entitled to qualified immunity for intentional torts such as assault and battery only if they are performing discretionary functions during the course of their employment, and the acts were taken in good faith and without malice. *Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008). In light of the evidence and this Court's findings relative to the excessive force claim, the Court recommends that Plaintiff's assault and battery claim against Defendant Colliver be dismissed, and his claim against Defendant Roberts proceed to trial.

### b. Gross Negligence

In addition to Plaintiff's federal claims and state law assault and battery claim, Plaintiff asserts a claim of gross negligence under Michigan law. An officer or employee of a governmental agency is immune from tort liability while acting within the course of his employment, unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury. Mich. Comp. Laws § 691.1407(2). Gross negligence is "conduct so reckless as to demonstrate a

14

substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(7)(a).

"Michigan has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010); *Kelly v. Fruit*, No. 05-73253, 2006 WL 3544107, at *10 (E.D. Mich. Dec. 8, 2006). Plaintiff's claim of gross negligence is based entirely upon his claim of excessive force and assault and battery. Hence, the gross negligence claim should be dismissed.

### 3. Conclusion

The Court recommends that Defendants' Motion for Summary Judgment be granted with respect to all claims against Defendant Colliver and Defendant Township, and with respect to claims of deliberate indifference and gross negligence against Defendant Roberts. The Court recommends that Defendants' Motion for Summary Judgment be denied relative to Plaintiff's claims of excessive force and assault and battery against Defendant Roberts.

## III.   **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2),

a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 28, 2010                           s/ Mona K. Majzoub
                                               MONA K. MAJZOUB
                                               UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of record on this date.


Dated: July 28, 2010                           s/ Lisa C. Bartlett
                                               Case Manager